Elmer Dunbar and Linda : 
Dunbar, his Wife, : No. 1907 C.D. 2015
: Argued: June 6, 2016
Appellants :
:
v. :
:
Zoning Hearing Board of the :
City of Bethlehem and Grace :
Kelleher, Martha Popichak, and :
Andrew Popichak and William :
Tomino and Joan Tomino :


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge
HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY SENIOR JUDGE FRIEDMAN                     FILED: July 18, 2016


Elmer Dunbar and Linda Dunbar, his wife (Dunbar), appeal from the September 11, 2015, order of the Court of Common Pleas of Northampton County (trial court) denying and dismissing Dunbar's appeal from the decision of the Zoning Hearing Board (ZHB) of the City of Bethlehem (City), which granted William and Joan Tomino (Tomino) a special exception and a dimensional variance. We affirm.


Tomino owns property on a 5,225-square-foot corner lot located at 1037 Main Street (Property) in the City. The Property is zoned RT High Density Residential District (RT) and is one block from Moravian College. Tomino operates a deli on the Property, which is a nonconforming use. The Property has had various nonconforming uses since 1926. The deli has been in operation since the ZHB

approved a change in the use of the Property from an insurance office to a deli in April 1998.[1]  (ZHB Findings of Fact, No. 5.)

In October 2013, Tomino filed an application with the ZHB for a special exception to change the nonconforming deli use to a nonconforming restaurant use, as defined in the City's Zoning Ordinance (Ordinance).  Tomino also requested a dimensional variance to expand the nonconforming restaurant from 540 square feet to 1,080 square feet.

On November 20, 2013, the ZHB held a hearing at which Tomino and numerous objectors appeared.[2]    The ZHB found that "[i]n the present zoning ordinance, 'delicatessen' is not a permitted use in and of itself; a delicatessen falls under the ambit of 'restaurant' in the new zoning code."  (Id., No. 6.)  Unlike surrounding restaurants, the deli has limited hours of operation and delivery restrictions.  (Id., No. 7.)  The deli is only 18 feet by 30 feet and has one refrigerated case for meats, one refrigerated case for drinks, and one preparation area.[3]  (Id., Nos. 9, 10.)  The deli is take-out only, and there are no tables inside.  (Id., No. 11.)  The

---

[1] The April 1998 decision limited the deli's hours of operation to 10:30 a.m. to 6:00 p.m. Monday through Friday and 11:00 a.m. to 6:00 p.m. Saturday.  Tomino agreed to waive the right to request any changes to the conditions in the 1998 decision unless there was a change in use.

[2] Objectors included Al Bernotas, Joel Dellinger, Elmer Dunbar, Grace Kelleher, Andrew Popichak, and Martha Popichak.

[3] The ZHB noted that Tomino is unable to have a grill or fryer in the deli and can only make sandwiches and food that can be warmed in a microwave or crockpot.  (ZHB Op. at 8 n.5.)

2

ZHB found that the space is "totally inadequate for preparation of food and storage of goods." (*Id.*, No. 12.)

The ZHB further found that Tomino needs to expand the floor area to add tables and two handicap-accessible restrooms as required by Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§12101-12213. (*Id.*, No. 13.) Tomino plans to add: three tables with four chairs at each table, a new door with a handicap-accessible ramp, new curbing to support the off-street parking lot, ventilation between Tomino's buildings, and two handicap-accessible bathrooms. Tomino also plans to renovate the exterior of the building and increase the hours of operation to 10:00 a.m. to 11:00 p.m., seven days per week. (*Id.*, Nos. 13-15, 18, 20-21, 26.) The Property is within one block of Moravian College's dining hall and a 24-hour laundromat. (*Id.*, Nos. 24-25.) There are also several other restaurants in the area. (*Id.*, No. 28.) The deli has been operating at a financial loss since 2010, and Tomino seeks expansion for the survival of the business, as it is necessary for the reasonable use of the Property. (*Id.*, Nos. 27, 30.)

The ZHB determined that Tomino met the general requirements for a special exception to change from the nonconforming deli use to a nonconforming restaurant use. (ZHB Op. at 11-12.) The change is consistent with the spirit, purpose, and intent of the Ordinance; encourages the most appropriate use of the land; does not overcrowd the land; conserves the value of the land; benefits the neighborhood; does not increase traffic congestion; provides adequate light and air; and protects from fire, flood, and other dangers. (*Id.* at 12-14.) Further, the ZHB determined that the restaurant use is consistent with the character of the district, as

3

there are other restaurants and businesses in the area. (*Id.* at 14.) The ZHB found that the restaurant use conforms with all applicable Ordinance requirements, except for the expansion beyond 50 percent, will not increase traffic, and has adequate off-street parking. (*Id.* at 14-15.) Thus, the ZHB determined that Tomino met all the applicable criteria for a special exception.

With regard to the dimensional variance to increase the restaurant's size beyond 50 percent, the ZHB determined that Tomino met all the applicable criteria for a variance. (*Id.* at 16, 22.) The ZHB also found that an unnecessary hardship would result if the dimensional variance were denied because, among other things, the building, which is a nonconforming structure with a nonconforming use, is "completely inadequate to operate a restaurant use." (*Id.* at 20-21.)

On January 3, 2014, the ZHB granted Tomino's request for a special exception and a variance. On January 30, 2014, Dunbar appealed to the trial court, and Tomino intervened. The trial court determined that the ZHB's conclusions are supported by the facts of record and that the ZHB did not err in granting Tomino a special exception and a variance. (Trial Ct. Op. at 5-7.) Dunbar now appeals to this court.[4]

---

[4] Where, as here, the trial court takes no additional evidence, our review is limited to determining whether the ZHB abused its discretion or committed an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). An abuse of discretion will be found only if the ZHB's findings are not supported by substantial evidence, which is such relevant evidence that a reasonable person would "accept as adequate to support a conclusion." *Id.* at 640.

Initially, Dunbar[5] contends that the trial court erred in determining that Tomino is entitled to a special exception to change the Property's current nonconforming deli use to a nonconforming restaurant use in the RT zoning district. Dunbar contends that Tomino failed to meet the conditions in article 1323.07 of the Ordinance. Dunbar states that the change in use will alter the character of the neighborhood, is contrary to the public interest, and is unnecessary. We disagree.

> A nonconforming use is:
>
> a use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

Section 107 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 744, *as amended*, 53 P.S. §10107. "A special exception is not an exception to a zoning restriction, but a use that is expressly permitted." *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 831 A.2d 764, 769 (Pa. Cmwlth. 2003), *aff'd*, 907 A.2d 494 (Pa. 2006). The requestor has the burden of persuading the ZHB that the proposed use satisfies the objective requirements of the ordinance. *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 910 (Pa. Cmwlth. 1980). Once a requestor proves compliance with an ordinance, the burden shifts to the objector to prove that the special exception use would have an adverse effect on the general public that is not normally associated with the proposed use. *Ruddy v.*

---

[5] Dunbar had standing as an adjacent property owner.

5

*Lower Southampton Township Zoning Hearing Board*, 669 A.2d 1051, 1057 (Pa. Cmwlth. 1995).

Article 1323.07 of the Ordinance provides:

A non[]conforming use may be changed to another non[]conforming use only under the following conditions:

(a)     Such change shall be permitted only by special exception, under the provisions of Article 1325.07, before the [ZHB].[6]

---

[6] The general requirements and standards applicable to all special exceptions are set forth in article 1325.07(b) of the Ordinance, as follows:

The [ZHB] shall grant a special exception only if it finds adequate evidence that any proposed use submitted for a special exception will meet all of the following general requirements, as well as any specific requirements and standards listed for the proposed use.  The [ZHB] shall, among other things, require that any proposed use and location be:

(1)     In accordance with the City of Bethlehem Comprehensive Plan and consistent with the spirit, purposes, and intent of this Ordinance.

(2)     In the best interest of Bethlehem, the convenience of the community, the public welfare, and be a substantial improvement to property in the immediate vicinity.

(3)     Suitable for the property in question, and designed, constructed, operated and maintained so as to be in harmony with and appropriate in appearance with the existing or intended character of the general vicinity.

(4)     In conformance with all applicable requirements of this Ordinance.

**(Footnote continued on next page…)**

6

(b) The applicant shall show that a non[]conforming use cannot reasonably be changed to a permitted use.

(c) The applicant shall show that the proposed change will be less objectionable in external effects than the existing non[]conforming use with respect to:

(1) Traffic generation and congestion including truck, passenger car and pedestrian traffic.

(2) Noise, smoke, dust, fumes, vapors, gases, heat, odor, glare, and vibration.

(3) Storage and waste disposal.

(4) Appearance.

---

**(continued…)**

(5) Suitable in terms of permitting the logical, efficient and economical extension of public services and facilities such as public water, sewers, police and fire protection and public schools.

(6) Suitable in terms of effect on street, traffic and safety with adequate sidewalks and vehicular access arrangements to protect major streets from undue congestion and hazard.

(7) The proposed use shall not create a significant hazard to the public health and safety, such as fire, toxic or explosive hazards.

(8) The proposed use shall be suitable for the site, considering the disturbance of steep slopes, mature woodland, wetlands, floodplains, springs and other important natural features.

Further, under article 1325.07(c) of the Ordinance, the ZHB may impose conditions as necessary to ensure that the general purpose of the Ordinance is complied with and that the adjacent properties are safeguarded.

Here, the ZHB found that the Property "could not reasonably be converted to a conforming use." (ZHB Op. at 15.) Further, Tomino presented the testimony of Pat Curullo, a licensed architect, who testified that the proposed plan does not overcrowd the land, meets the City's parking requirements, meets the City's requirements under the Ordinance, and results in a more aesthetic and attractive facility that operates more efficiently.

Tomino testified that the proposed plan conserves the value of the land and buildings because without the change, the deli business will ultimately close. A more attractive building will also benefit the neighborhood. Further, the proposed plan does not increase the traffic congestion or the population. Tomino testified that the majority of his business is from Moravian College students, faculty and employees and people who live near the Property. Tomino also testified that there is more than adequate parking.

Tomino's proposed plan provides for adequate light and air and secures safety from fire, flood, and other dangers. The proposed plan requires land development approval from the City, which includes meeting all existing building and fire codes. Further, the proposed plan requires Tomino to construct two handicap-accessible restrooms and an entranceway. Thus, the Property will be safer than it is now.

The Property is in a medium- to high- density residential zoning district that has three restaurants and a cafeteria within close proximity. Thus, the ZHB found that the character of the district is suitable for another restaurant use.

8

We agree with the ZHB that the change from a deli use to a restaurant use is consistent with the spirit, purpose, and intent of the Ordinance[7] and is consistent with the most appropriate use of the land, in that the deli existed as a nonconforming use and will continue in a similar capacity as a restaurant use. A property owner has a constitutional right to continue a nonconforming use. *Richland Township v. Prodex, Inc.*, 634 A.2d 756, 767 (Pa. Cmwlth. 1993). The lawful, nonconforming use establishes in the property owner a vested right that "cannot be abrogated or destroyed unless it is a nuisance, or it is abandoned by the owner, or it is extinguished by eminent domain." *Pennridge Development Enterprises, Inc. v. Volovnik*, 624 A.2d 674, 675 (Pa. Cmwlth. 1993). Tomino's property rights have not been abrogated, destroyed, extinguished by eminent domain, or abandoned. Thus, Tomino has a constitutional right to continue the nonconforming use.

We agree with the ZHB that the proposed plan conforms with all applicable requirements of the Ordinance, except for the expansion beyond 50 percent, which is the subject of the dimensional variance request. No other zoning relief is requested or required. Thus, the ZHB correctly found that Tomino met the requirements in article 1325.07 of the Ordinance for a special exception.

---

[7] The Ordinance's stated purposes include: promoting the public health, safety, morals, and general welfare by encouraging the most appropriate use of the land; preventing overcrowding of the land; conserving the value of the land and buildings; lessening the congestion of traffic on the roadways; providing adequate light and air; facilitating the adequate provision of transportation, water, sewage, schools, parks, and other public facilities; giving reasonable consideration to the character of the district and its suitability for particular purposes; and guiding and regulating the orderly growth, development and redevelopment of the City in accordance with the City's comprehensive plan. (Ordinance, Art. 1301.03.)

9

Because Tomino proved that the proposed use met the objective requirements of article 1323.07 of the Ordinance, the burden then shifted to Dunbar to demonstrate that the use will be detrimental to the public health, safety, and general welfare. *See Broussard*, 831 A.2d at 772. Dunbar must demonstrate more than unsubstantiated concerns or vague generalities, and "[m]ere speculation as to possible harm is insufficient." *See id.* Further, mere lay testimony of concerns regarding increased traffic or fire safety is insufficient to support the denial of a special exception. *See Bray*, 410 A.2d at 914 (stating that "to warrant a denial, there must be 'not only a likelihood, but a high degree of probability' that the traffic increase would pose a substantial threat to the health and safety of the community") (citation omitted).

The objectors, including Dunbar, testified before the ZHB regarding their concerns that: Tomino will not follow through with his promise to upgrade the Property; there may be excessive exhaust smoke; traffic may increase; and parking may be a problem. The objectors did not present any expert testimony. Because the evidence presented is only speculative, Dunbar failed to prove that the use will be detrimental to the public health, safety, and general welfare. Thus, the ZHB did not err in granting Tomino a special exception.

Next, Dunbar contends that the ZHB erred and abused its discretion in granting Tomino's request for a variance to increase the size of the proposed restaurant by 100 percent in violation of article 1323.04 of the Ordinance.[8] Dunbar

---

[8] Article 1323.04 of the Ordinance provides that a nonconforming use shall only be expanded as follows:

**(Footnote continued on next page…)**

10

specifically contends that Tomino did not prove any hardship warranting a variance because the Property can continue to be used as a deli, the surrounding neighborhood will be greatly impacted by the expansion, the restaurant use is not a permitted use, and the expansion of the premises by 100 percent is unnecessary.

To establish a right to a variance, the landowner must prove an unnecessary hardship by showing that: (1) there are unique physical circumstances or conditions of the property; (2) the property cannot be developed in strict conformity with the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood or be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief. Section 910.2 of the MPC, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2.

In *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 48 (Pa. 1998), the Pennsylvania Supreme Court stated that "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought."

---

**(continued…)**

> (a)     The total building floor area or total land area occupied by the nonconforming use or structure, whichever is more restrictive, shall not be increased by greater than 50 percent beyond the area that existed at the time the use or structure first became nonconforming.

> To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

*Id.* at 50. *Hertzberg* adopted a more relaxed standard for a dimensional variance because "the owner [was] asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable [zoning] regulations." *Id.* at 47.

Under the doctrine of natural expansion, a nonconforming use may be expanded in scope as the business increases in magnitude over the ground occupied by the business owner at the time the zoning ordinance was enacted. *Pappas v. Zoning Board of Adjustment of the City of Philadelphia*, 589 A.2d 675, 677 (Pa. 1991). This court must consider whether the variance is necessary for the property owner's business to remain financially viable and whether it is "the minimum necessary to support the business." *Domeisen v. Zoning Hearing Board of O'Hara Township*, 814 A.2d 851, 857-58 (Pa. Cmwlth. 2003). This court must also consider whether the proposed expansion will be detrimental to the public welfare. *Id.* at 858.

Here, we agree with the ZHB that Tomino's expansion of the nonconforming restaurant is necessary for the reasonable use of the Property. Tomino demonstrated the difficulties the current establishment presents to the operation of the deli and the inadequacies of the building space, having only enough room for one refrigerated meat case, one refrigerated soda case, and one preparation

area.  Tomino also testified that he is unable to compete with other local businesses that have unlimited hours and menu items.

Curullo testified that the building's square-footage is totally inadequate to conduct Tomino's business.  Curullo stated that Tomino needs an additional 540 square feet to install additional equipment, tables and chairs, and ADA-compliant restrooms and a handicap ramp.  Curullo determined that the additional 540 square feet was "barely the minimum necessary."  (N.T., 11/20/13, at 26.)

We further agree with the ZHB that the proposed expansion will not adversely impact the neighborhood but will result in a more aesthetically-pleasing appearance that is ADA-compliant and in which customers can sit down for a meal.  There is no evidence that the proposed expansion will be detrimental to the health, safety, or welfare of the surrounding community.

Lastly, Dunbar contends that the proposed use is not a continuation of an existing nonconforming use but is a change in use.  We disagree.

In *Limley v. Zoning Hearing Board*, 625 A.2d 54, 56 (Pa. 1993), the Pennsylvania Supreme Court held that a proposed public restaurant and bar was a natural expansion of the existing, nonconforming use as a private social club.  The Court determined that the chief activity of the social club was the sale of food and beverages and that the activity would remain the same with the proposed restaurant

13

and bar. *Id.* Because this use was similar to the existing use, it continued as a preexisting, nonconforming use and did not create a new and different use.[9] *Id.* at 57.

Here, the proposed restaurant use is a natural expansion of the deli use. The expansion from 540 square feet to 1,080 square feet is not unreasonable and is the minimum amount necessary for the restaurant use. Further, the expansion is not detrimental to the health, safety, or welfare of the community. Thus, the ZHB did not err in granting Tomino a dimensional variance.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

---

[9] Likewise, in *Pappas*, the Pennsylvania Supreme Court determined that a nonconforming, eat-in restaurant was the natural expansion of a nonconforming, primarily take-out sandwich shop and did not constitute a new and different use. 589 A.2d at 678.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elmer Dunbar and Linda
Dunbar, his Wife,

                Appellants

           v.

Zoning Hearing Board of the
City of Bethlehem and Grace
Kelleher, Martha Popichak, and
Andrew Popichak and William
Tomino and Joan Tomino

: No. 1907 C.D. 2015

# O R D E R

AND NOW, this 18th day of July, 2016, we hereby affirm the September 11, 2015, order of the Court of Common Pleas of Northampton County.

_____
ROCHELLE S. FRIEDMAN, Senior Judge