IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caln-Nether Company, LP,                    :
                             Appellant    :
                                    :
           v.    :    No. 1077 C.D. 2020
                                    :    Argued: November 15, 2021
Zoning Hearing Board of Thornbury        :
Township and Thornbury Township        :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY ELLEN CEISLER                       FILED:  December 8, 2021

Caln-Nether Company, LP (Caln-Nether) appeals from an order of the Court of Common Pleas of Chester County (Common Pleas), dated September 24, 2020, denying Caln-Nether's appeal from a decision of the Zoning Hearing Board of Thornbury Township (ZHB).[1] Relevant to this appeal, the ZHB denied Caln-Nether's application for a special exception (Application) and Caln-Nether's substantive validity challenge to Section 155-13 of the Thornbury Township Zoning Ordinance[2] in effect at the time the application was filed (Current Zoning Ordinance). For the reasons discussed below, we affirm.

Caln-Nether owns two contiguous vacant lots (collectively, Property) located in the "A" Agricultural and Residential District (A District) of the Township in Chester County, Pennsylvania. ZHB Findings of Fact (F.F.) Nos. 3-4, 6, 11; ZHB

---

[1] Common Pleas also denied a cross-appeal filed by Thornbury Township (Township) from the ZHB's decision. Common Pleas' denial of the cross-appeal is not at issue before this Court.

[2] Former Thornbury Township Zoning Ordinance, Chester County, Pa., *as amended* (1994).

Decision at 24. The first lot comprising the Property, identified as UPI No. 66-3D-41 and referred to as "Lot 1," measures approximately 2.390 gross acres and was created by a subdivision plan in 1955. ZHB F.F. Nos. 5, 12. The second lot, identified as UPI No. 66-3D-39 and referred to as "Lot 2," measures approximately 3.507 gross acres and was created under a different subdivision plan in 1958. ZHB F.F. Nos. 5, 13. Caln-Nether purchased the Property on July 27, 2004. ZHB F.F. No. 10.

On March 21, 2019, Caln-Nether submitted the above-mentioned Application to the ZHB, seeking a special exception to permit the construction of a church or similar place of worship on the Property pursuant to Section 155-10.D(2) of the Current Zoning Ordinance.[3] Caln-Nether also presented a substantive validity challenge to Section 155-13 of the Current Zoning Ordinance, which sets forth lot requirements for "large lots" and "small lots" located in the A District. Current Zoning Ordinance § 155-13. The ZHB held hearings on the Application on May 15, 2019; June 25, 2019; July 24, 2019; and August 27, 2019.

On November 11, 2019, the ZHB issued its decision denying the Application and Caln-Nether's substantive validity challenge to Section 155-13 of the Current Zoning Ordinance. Observing that Section 155-69 of the Current Zoning Ordinance

_____

[3] Section 155-10.D.(2) of the Current Zoning Ordinance permits a "[c]hurch or similar place of worship, including [a] rectory or parish house" as a use in the A District "when authorized by the [ZHB] as a special exception." Current Zoning Ordinance § 155-10.D.(2). Caln-Nether was seeking special exception approval for purposes of marketing the Property for a church or similar place of worship to potential tenants or buyers, as Caln-Nether preferred to own the Property and lease it to a tenant. ZHB F.F. Nos. 17-18. Caln-Nether, however, did not have a proposed tenant or buyer at the time it submitted the Application. ZHB F.F. No. 15. It is also worth noting that, in addition to the instant Application, Caln-Nether separately filed two additional applications seeking special exception approval in relation to the Property: one application for a club/lodge use and one application for a school/other educational institution use. ZHB Decision at 1 n.1. Those applications are not at issue in this appeal.

governed its review of special exception applications, the ZHB concluded that Caln-Nether failed to satisfy Section 155-69.A, requiring the ZHB to "[g]ive full consideration to the size, scope, extent and character of the exception . . . desired and assure itself that such request is consistent with the spirit, purpose and intent of [Part 1 of the Current Zoning Ordinance (outlining general provisions)]." *See* ZHB Decision at 19-24; Current Zoning Ordinance § 155-69.A. In so doing, the ZHB observed that Caln-Nether specifically sought to construct a 64,000-square-foot building with a height not greater than 35 feet, along with 236 parking spaces on the Property. ZHB F.F. No. 14; ZHB Decision at 20. The ZHB further observed that it was uncontested that the Property was located in the A District and that properties located in that district were subject to the zoning regulations set forth in Article III, Sections 155-10 through 155-15 of the Current Zoning Ordinance. ZHB Decision at 20; *see* Current Zoning Ordinance §§ 155-10-155-15.. Pertinent herein, Section 155-11 of the Zoning Ordinance provides:

> § 155-11. Categories of lots in A Districts.
>
> There shall be four categories of lots in A Districts, as follows:
>
> > A. A lot which was, or is hereafter, created under a subdivision plan approved when the minimum area required hereunder was or is not less than 80,000 square feet shall be known as a "large lot."
> >
> > B. A lot which was created under a subdivision plan approved when the minimum area required hereunder was approximately 40,000 square feet shall be known as a "small lot."
> >
> > C. Except for cluster lots, a lot which, whether created by subdivision plan or otherwise, is less than 40,000 square feet shall be known as a "nonconforming lot."

D. A lot less than 40,000 square feet created pursuant to Article XVII (Cluster Residential Development Option), shall be known as a "cluster lot."

Current Zoning Ordinance § 155-11 (amendment history omitted). Additionally, Section 155-13 of the Current Zoning Ordinance provides:

§ 155-13. Lot requirements.

The minimum area, open space, clearance and road frontage requirements of the large and small lots described in § 155-11 are as follows:

A. Large Lot.

(1) The area, exclusive of all easements, shall be at least 80,000 square feet, of which the buildings shall occupy not more than 15%. Impervious surface coverage shall not exceed 20% of the lot area.

(2) There shall be a frontage of at least 250 feet, except in the case of a cul-de-sac, where a lot fronting solely or partially on the turnaround portion shall have a frontage of at least 125 feet.

(3) There shall be a front yard of at least 100 feet in depth.

(4) There shall be two side yards, each at least 50 feet wide.

(5) There shall be a rear yard of at least 75 feet in depth, no more than 15% of the area of which may be occupied by accessory buildings.

(6) Every lot shall have a width of not less than 250 feet at the building setback line.

B. Small lot.

(1) The area, exclusive of all easements, shall be at least 40,000 square feet, of which the buildings shall occupy not more than 15%. Impervious surface coverage shall not exceed 20% of the lot area.

(2) There shall be a frontage of at least 200 feet, except in the case of a cul-de-sac, where a lot

4

> fronting solely or partially on the turnaround portion shall have a frontage of at least 125 feet.
>
> (3) There shall be a front yard of at least 100 feet in depth.
>
> (4) There shall be two side yards, each at least 30 feet wide.
>
> (5) There shall be a rear yard of at least 50 feet in depth, no more than 15% of the area of which may be occupied by accessory buildings.
>
> (6) Every lot shall have a width of not less than 200 feet at the building setback line.

*Id.* § 155-13 (amendment history omitted).

The ZHB first determined that the Property fell under the "small lot" category set forth in Section 155-11(B.) of the Current Zoning Ordinance. The ZHB observed that Lots 1 and 2 were created in 1955 and 1958, respectively, at which time a prior version of the Township's zoning ordinance—the Zoning Ordinance of 1950—was in effect.[4] ZHB Decision at 21. The ZHB explained that, while the Zoning Ordinance of 1950 did not specifically state a "minimum lot area" for lots in the A District, it did provide the following minimum dimensional requirements, setbacks, and depths that all lots located in that district were required to have: (1) a front yard with a minimum depth of 100 feet, (2) 2 side yards with a minimum width of 30 feet, (3) a rear yard with a minimum depth of 75 feet, and (4) a minimum lot frontage of 200 feet. ZHB Decision at 21-22; Reproduced Record (R.R.) at 119a. Using these minimum requirements, and assuming a "zero[-]square-foot building envelope," the

---

[4] The Zoning Ordinance of 1950 was the first zoning ordinance adopted in the Township, and it likewise identified the Property as being located in the A District of the Township. ZHB F.F. No. 22.b. Former Thornbury Township Zoning Ordinance, Chester County, Pa., *as amended* (1950).

ZHB reasoned that the minimum lot area for lots in the A District under the Zoning Ordinance of 1950 would be 35,000 square feet.[5] ZHB Decision at 21-22.

Observing that Section 155-11.B. of the Current Zoning Ordinance deemed "lots which were created under a subdivision plan approved when the minimum area required was *approximately 40,000 square feet* as 'small lots,'" and in light of its conclusion that the minimum lot area for lots in the A District under the Zoning Ordinance of 1950 would be 35,000 square feet (as calculated by the ZHB), the ZHB concluded that the Zoning Ordinance of 1950 "*did*, in effect, set forth a minimum lot area for lots in the 'A' District that was 'approximately 40,000 square feet.'" ZHB Decision at 22 (emphasis in original). Thus, according to the ZHB, Lots 1 and 2 were "small lots" pursuant to Section 155-11.B. of the Current Zoning Ordinance.[6] *Id.*

The ZHB continued by reasoning that, as two "small lots," the Property was subject to the provisions of Section 155-13.B.(1) of the Current Zoning Ordinance, which limited building coverage to a maximum of 15% of the lot area and impervious surface coverage to a maximum of 20% of the lot area. The ZHB further noted that, while Caln-Nether "was vague as to whether it intended to merge the two 'small lots' into one new lot" of 5.897 acres, even if Caln-Nether did merge the lots, that new lot would be deemed a "large lot" under Section 155-11.A. of the Current Zoning Ordinance and would be subject to the same maximum building coverage and impervious surface coverage limits of 15% and 20%, respectively. ZHB

---

[5] By way of further explanation, the ZHB added the 100-foot front yard requirement to the 75-foot rear yard requirement to obtain a total yard depth of 175 feet. The ZHB then multiplied the 175-foot-yard depth by the 200-foot frontage requirement to yield a total of 35,000 square feet.

[6] The ZHB further supported its conclusion by noting that it was consistent with the Township's Zoning Map, which designated Lots 1 and 2 as "small lots." ZHB Decision at 22-23.

Decision at 23. Caln-Nether's proposed plan, however, provided a building coverage of 24.91% and an impervious surface coverage of 64.77%. *Id.* The ZHB observed that "[t]hese coverages are inconsistent with the 'A' District area and bulk regulations for either a 'small lot' or a new 'large lot' and far exceed the permitted development of the Property under the Current Zoning Ordinance." *Id.* As such, the ZHB concluded that Caln-Nether failed to satisfy the requirement of Section 155-69.A. of the Zoning Ordinance, "as the size, scope, extent and character of the proposed church or other similar place of worship exceeds that which is permitted by the Current Zoning Ordinance."[7] *Id.* Because the ZHB determined that Caln-Nether failed to demonstrate compliance with the Current Zoning Ordinance, the ZHB denied the Application.

The ZHB also rejected Caln-Nether's substantive validity challenge to Section 155-13 of the Current Zoning Ordinance. As noted by the ZHB, Caln-Nether argued that: (1) Section 155-13's "small lot" area and bulk requirements were unduly restrictive such that it was not feasible to construct a compliant church building on the Property; (2) there were "no parking standards governing the church use" and "no parking standards whatsoever" in the Current Zoning Ordinance, rendering the Current Zoning Ordinance unconstitutionally vague and turning any attempt by the Township to "make up its own standards" into an unreasonable limit on religious activities and structures; and (3) the "unduly restrictive" area and bulk regulations and lack of parking standards were in violation of the Religious Land Use and

---

[7] The ZHB also concluded that Caln-Nether failed to satisfy certain special exception standards in Section 155-69 of the Current Zoning Ordinance on the basis that Caln-Nether's use of the Property, as proposed, would have a negative effect on traffic congestion and result in a degradation of the level of service at the intersection where the Property was located. ZHB Decision at 23-24.

Institutionalized Persons Act of 2000 (RLUIPA),[8] as they "unreasonably limit religious assemblies, institutions, or structures." ZHB Decision at 27.

The ZHB first reasoned that, while Caln-Nether argued that Section 155-13 of the Current Zoning Ordinance was vague, ambiguous, arbitrary, and impossible to comply with as to the proposed special exception use, both Caln-Nether's and the Township's civil engineering experts testified that it was possible to construct a church or other similar place of worship in compliance with Section 155-13's regulations. ZHB Decision at 28. Specifically crediting the testimony of the Township's civil engineering experts indicating that it was possible to construct a church on the Property in compliance with the area and bulk regulations of the A District, the ZHB also credited the testimony of the Township's land planning expert insofar as he stated that the Property was appropriate for a church or similar place of worship, but that Caln-Nether's 64,000-square-foot building was not appropriate for the Property. *Id.* The ZHB noted that even Caln-Nether's counsel conceded that his own engineer testified that it would be feasible to construct an approximately 13,000-square-foot building for a church or other similar place of worship use, and reasoned that the Township was not required to permit, by zoning, the largest possible church or place of worship. *Id.* The ZHB added that Caln-Nether failed to introduce sufficient evidence that the regulations in Section 155-13 were arbitrary, instead concluding that they were intended to address legitimate health, safety, and welfare concerns of the Township. *Id.* at 29. The ZHB concluded that even the regulations applicable to a "small lot" would permit the construction of at least a 5,000-square-foot building to house a church or other similar place of worship. *Id.* Thus, according to the ZHB, Section 155-13 was not vague, ambiguous, or arbitrary,

---

[8] 42 U.S.C. §§ 2000cc-2000cc-5.

and it did not make it impossible to construct a church or other similar place of worship in compliance with the Current Zoning Ordinance.

The ZHB also rejected Caln-Nether's argument that Section 155-13 of the Current Zoning Ordinance was substantively invalid because the Current Zoning Ordinance did not include parking standards governing a church use. The ZHB reasoned that there were parking regulations governing uses in the A and B Districts set forth in Section 155-87 of the Current Zoning Ordinance.[9] ZHB Decision at 29. The ZHB observed that Caln-Nether did not challenge the substantive validity of Section 155-87, nor did Caln-Nether introduce sufficient evidence that the parking regulations in that provision were "so unduly restrictive that they ma[de] it impossible for [Caln-Nether] to construct a church of some size with associated parking on the Property." *Id.* at 30. The ZHB added that there was no requirement in the Pennsylvania Municipalities Planning Code (MPC)[10] that a zoning ordinance must include "parking standards governing a church use" and that, while Caln-Nether argued that the Township could not "just 'make up its own standards' in its own discretion," Caln-Nether "failed to introduce evidence that the Township had

---

[9] Section 155-87 of the Current Zoning Ordinance provides, in relevant part:

§ 155-87. Parking areas.

> A. For every house in A Districts hereafter erected there shall be provided at least one parking area, either enclosed or open, situated completely off the right-of-way of the street or road upon which said premises abuts, which parking area shall be at least 400 square feet in area and with an outlet to a street or road abutting the property.

> B. In B Districts there shall be at least 200 square feet of parking space for every 200 square feet of commercial floor area of any store or commercial building hereafter erected.

Current Zoning Ordinance § 155-87.

[10] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

9

endeavored to 'make up its own standards' for parking requirements for a church use." *Id.* at 29.

Finally, the ZHB addressed Caln-Nether's contention that applying the building coverage and impervious surface coverage limitations from Section 155-13 of the Current Zoning Ordinance to a church use imposes a substantial burden on and unreasonably limits religious activity in violation of the RLUIPA. The ZHB reasoned that, while Caln-Nether relied upon *Islamic Society of Basking Ridge v. Township of Bernards*, 226 F. Supp. 3d 320 (D.N.J. 2016), in support of its position, that case was distinguishable. The ZHB specifically noted that, in *Islamic Society of Basking Ridge*, the township involved was found to have applied a parking ordinance that was facially valid with sufficient intent to discriminate against a special exception applicant on the basis of religion. The ZHB reasoned that, here, the Current Zoning Ordinance permitted churches or similar places of worship without distinction between different faiths, all permitted uses in the A District were subject to the regulations in Section 155-13 and Section 155-87 of the Current Zoning Ordinance, and the "church or similar place of worship" use was not subject to any additional or different regulations from other permitted uses in the A District. ZHB Decision at 30-31. Further, Caln-Nether failed to introduce evidence that the Township was, in fact, "making up its own standards" and applying them to the proposed church use. *Id.* at 31. The ZHB concluded that, based on the evidence presented by Caln-Nether, the building coverage and impervious surface coverage limitations in Section 155-13 were not so restrictive as to impose a substantial burden on religious activities in violation of the RLUIPA. *Id.*

Caln-Nether appealed from the ZHB's decision to Common Pleas, which denied Caln-Nether's appeal. While Common Pleas held that the ZHB erred in

concluding that the Property fell within the definition of a "small lot,"[11] Common Pleas observed that, whether a "small lot" or "large lot" in the A District, all are bound by the same 15% building coverage and 20% impervious surface coverage requirements under Section 155-13 of the Current Zoning Ordinance. Common Pleas Decision at 14. As the Application provided for 24.91% building coverage and 64.77% impervious surface coverage, Common Pleas found that Caln-Nether failed to satisfy the objective requirements of the Current Zoning Ordinance and that the ZHB properly denied the special exception requested on that ground.[12] *Id.* at 13-14. Additionally, Common Pleas held that the ZHB properly rejected Caln-Nether's substantive validity challenge to Section 155-13 of the Current Zoning Ordinance. *Id.* at 16-19. This appeal followed.

On appeal,[13] Caln-Nether argues that the ZHB erroneously concluded that Caln-Nether failed to meet the special exception standards for a proposed church

---

[11] Common Pleas reasoned that the Zoning Ordinance of 1950 did not identify a minimum lot requirement and that the ZHB's application of other minimum requirements set forth therein to create an otherwise non-existent minimum dimension was improper. Common Pleas observed that "the exercise engaged in by the ZHB in support of its conclusion . . . can yield lots ranging in size from 26,000 [square] feet to 35,000 [square] feet," which "in turn could result in lots defined as small lots or even nonconforming lots under the [Current Zoning] Ordinance." Common Pleas Decision at 12. Common Pleas also concluded that the ZHB erred insofar as it relied upon the Township Zoning Map designation to classify the Property as a "small lot," reasoning that the purpose of a zoning map is limited to delineating zoning district boundaries. *Id.* at 12-13 (relying upon *Tohickon Valley Transfer, Inc. v. Tinicum Twp. Zoning Hearing Bd.*, 509 A.2d 896, 904 (Pa. Cmwlth. 1986)).

[12] Common Pleas also concluded that the ZHB improperly denied the Application based on traffic concerns, as "the record did not support a finding . . . that there is a high probability that the proposed use will generate traffic not normally generated by the type of use and that the abnormal traffic threatens safety." Common Pleas Decision at 16.

[13] When, as in the present case, the trial court takes no additional evidence, this Court's review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Dunbar v. Zoning Hearing Bd. of City of Bethlehem*, 144 A.3d 219, 223 n.4

11

use. Caln-Nether also contends that the ZHB improperly concluded that application of the "small lot" requirements did not unreasonably restrict religious assemblies, institutions, and structures in violation of RLUIPA.

This Court has observed as follows with respect to special exceptions:

> [A] special exception is not an exception to a zoning ordinance but, rather, is a conditionally permitted use, allowed by the legislature if specifically listed standards are met. [An a]pplication for a special exception is to be granted or denied by the ZHB pursuant to the express standards and criteria set forth in the applicable zoning ordinance. Thus, what an applicant must demonstrate to obtain a special exception is determined on a case-by-case basis and will vary among municipalities based upon the use requested and the language in the ordinance. Once the applicant for a special exception meets his initial burden of showing compliance with all the objective requirements of the zoning ordinance, it is presumed that the proposed use is consistent with the promotion of local concerns relating to general health, safety and welfare, . . . and, normally, the burden then shifts to any objectors to prove that the proposed use is, in fact, detrimental to the health, safety and general welfare of the community.

---

(Pa. Cmwlth. 2016). An abuse of discretion occurs when the zoning hearing board's findings are not supported by substantial evidence, "which is such relevant evidence that a reasonable person would 'accept as adequate to support a conclusion.'" *Id.* (quoting *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)). Further, "[w]here an appeal presents issues of law, including issues of statutory interpretation, this Court's scope of review is plenary and our standard of review is *de novo.*" *Marshall v. East Bradford Twp. Bd. of Supervisors*, 250 A.3d 481, 487 n.5 (Pa. Cmwlth.) (quoting *1050 Ashbourne Assocs., LLC v. Cheltenham Twp. Bd. of Comm'rs*, 167 A.3d 828, 831 n.6 (Pa. Cmwlth. 2017)), *appeal denied* (Pa., No. 231 MAL 2021, filed Oct. 14, 2021). "Because we review the ZHB's decision, we do not address any argument related to the trial court's decision." *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 887 (Pa. Cmwlth. 2015).

12

*Elizabethtown/Mt. Joy Assocs., L.P. v. Mount Joy Twp. Zoning Hearing Bd.*, 934 A.2d 759, 764 (Pa. Cmwlth. 2007) (footnote omitted) (citations omitted).[14]

Caln-Nether challenges the ZHB's conclusion that the Property is a "small lot" under Section 155-11.B. of the Current Zoning Ordinance. Taking the position that the determination "turns on the size of the lot at the time it was created or subdivided," Caln-Nether argues that the Property does not meet the definition of "small lot" provided in Section 155-11.B. of the Current Zoning Ordinance. Caln-Nether adds that Lots 1 and 2 were created at a time when there was no minimum lot requirement provided in the operative zoning ordinance (*i.e.*, the Zoning Ordinance of 1950) and before any such minimum was ever required or "small lot" category ever existed. Caln-Nether faults the ZHB for using other minimum requirements contained in the Zoning Ordinance of 1950 to "contrive" an otherwise unidentified minimum lot requirement that was neither established by that ordinance in fact nor based on the definition of "small lot" in the Current Zoning Ordinance. As such, Caln-Nether contends, the ZHB impermissibly added language that did not otherwise exist to reach a result inconsistent with the plain terms of the Current Zoning Ordinance. Caln-Nether also echoes the trial court's observation that the ZHB improperly relied upon the Township Zoning Map designation in support of its conclusion. Caln-Nether, thus, argues that the ZHB's finding that the Property is a "small lot" was clearly in error and was not supported by substantial evidence, as determined by the trial court.

---

[14] "An ordinance . . . may alter th[e above] general presumption by providing that the burden rests on the applicant with regard to issues of detriment to the health, safety and welfare of the community. However, in such a case, the applicant bears the burden of persuasion only, and the objectors retain the burden of production with respect to the general matter of detriment to health, safety and public welfare." *Elizabethtown/Mt. Joy Assocs., L.P.*, 934 A.2d at 764 n.6 (citations omitted).

The Township counters that the ZHB properly concluded that Caln-Nether failed to meet the objective requirements of the Current Zoning Ordinance for a special exception for a church use. In support, the Township contends that the same 15% building coverage and 20% impervious surface coverage limitations apply to all lots in the A District and, thus, the lot type of the Property—which has been zoned in the A District since 1950—is irrelevant to the issue of whether Caln-Nether is entitled to the special exception sought. The Township adds that Caln-Nether conceded that Lots 1 and 2 would have to be consolidated prior to land development; thus, upon consolidation, the new lot will fit within the definition of a "large lot" and nonetheless be subject to the same 15% building coverage and 20% impervious surface coverage requirements. The Township also contends that we should affirm the trial court's decision on this issue because Caln-Nether has waived it for failing to cite any legal authority in support of its claim.

The ZHB has also filed a brief in which it argues that it properly denied Caln-Nether's Application because the church building proposed by Caln-Nether failed to meet the Township's building and impervious surface coverage requirements. The ZHB first emphasizes that all lots in the A District must fall under one of the categories outlined in Section 155-11 of the Current Zoning Ordinance. The ZHB notes that the Property does not qualify as a "nonconforming lot" or "cluster lot" under that provision, as those categories turn on the size of the lot itself and require the lot to be less than 40,000 square feet. The ZHB further submits the "small lot" and "large lot" categories are not based on actual lot size, but rather by the minimum size permitted by the applicable ordinance in effect at the time of the lot's creation. The ZHB observes that Lots 1 and 2 were created under the Zoning Ordinance of 1950, which imposes various dimensional requirements that can be

14

used to calculate a minimum lot size. The ZHB also cites to Section 602 of the Zoning Ordinance of 1950, which provides that "[n]o lot area shall be reduced, nor shall any property be so sold or divided so as to make the open spaces about the buildings thereon smaller than the distances required by this Ordinance." *See* R.R. at 122a; Zoning Ordinance of 1950 § 602. Using these requirements and assuming a rectangular lot with no building, the ZHB concluded that the minimum lot size imposed by the Zoning Ordinance of 1950 was 35,000 square feet. The ZHB contends that, under the unique circumstances of this case, the minimum lot area imposed by the Zoning Ordinance of 1950 qualifies as "approximately 40,000 square feet" for purposes of Section 155-11 of the Current Zoning Ordinance; thus, the Property is indeed made up of two "small lots."[15]

The ZHB adds that, while not determinative, the Township's Zoning Map's indication that the Property was comprised of small lots is probative of the Township's interpretation, which is entitled to deference. The ZHB further notes that the map is a legislative component of the Current Zoning Ordinance through incorporation by reference. The ZHB also argues that the small lot category is the best fit for the Property and that the alternative would be to create a "phantom fifth category not contemplated by the [Current] Zoning Ordinance which escapes area and bulk requirements altogether" and is improper. ZHB's Br. at 19. The ZHB also claims that Caln-Nether represented that it intended to consolidate Lots 1 and 2 as

---

[15] The ZHB argues that, to the extent Caln-Nether purported to demonstrate to Common Pleas that the minimum lot size could actually fall as low as 26,000 square feet, Caln-Nether's calculations suffer from legal or mathematical errors or could not otherwise be verified. The ZHB adds that, even if Caln-Nether's calculations were correct, those calculations nonetheless demonstrate the error in Common Pleas' conclusion that "no" minimum lot size exists in the Zoning Ordinance of 1950. We note that Caln-Nether presents no argument to this Court regarding the accuracy of the ZHB's calculations using the minimum dimensions in the Zoning Ordinance of 1950, nor does it present any other potential minimum lot sizes using those dimensions.

part of its development plan and argues that, once consolidated, the Property would be considered a "large lot." The ZHB contends that the proposed plan providing for 24.91% of building coverage and 64.77% impervious surface coverage is inconsistent with the area and bulk regulations for either a small lot or large lot and, thus, the ZHB properly concluded that Caln-Nether failed to satisfy the requirements for special exception approval.

Turning to our analysis, we note that the principles of statutory construction also guide our interpretation of a zoning ordinance. *Bloomsburg Indus. Ventures, LLC v. Town of Bloomsburg*, 242 A.3d 969, 979 (Pa. Cmwlth. 2020). Our primary objective is to determine the intent of the legislative body that enacted the ordinance. *Id.* In this regard, "we are mindful that an ordinance's plain language generally provides the best indication of legislative intent." *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014). Further, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Additionally, every ordinance shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921. Moreover, "zoning ordinances must be construed expansively so as to afford the landowner the broadest possible use and enjoyment of his land. *THW Grp., LLC*, 86 A.3d at 336.

Having considered the parties' arguments, we conclude that the ZHB did not err or abuse its discretion in concluding that Lots 1 and 2 comprising the Property are "small lots" under Section 155-11.B. of the Current Zoning Ordinance and must comply with the 15% building coverage and 20% impervious surface coverage

16

requirements for such lots set forth in Section 155-13.B.(1) of the Current Zoning Ordinance. It is undisputed that Lots 1 and 2 were created by subdivision in 1955 and 1958, respectively, and have always been located in the A District. Section 155-11 of the Current Zoning Ordinance provides that "[t]here shall be four categories of lots in A Districts," including "large lots," "small lots," "nonconforming lots," and "cluster lots." Current Zoning Ordinance § 155-11. A plain reading of Section 155-11 of the Current Zoning Ordinance reveals that "nonconforming lots" and "cluster lots" turn on the size of the lot at issue and requires the lot to be less than 40,000 square feet. Lot 1, which is 2.390 acres, and Lot 2, which is 3.507 acres, are more than 40,000 square feet and thus cannot be "nonconforming lots" or "cluster lots."

Unlike "nonconforming lots" and "cluster lots," and contrary to Caln-Nether's position, "large lots" and "small lots" do not turn on the actual size of the lot at issue at any given time. Rather, we agree with the ZHB that Section 155-11.A. and B. of the Current Zoning Ordinance make that determination dependent upon the minimum lot size required by the zoning ordinance in effect at the time the lot was created, irrespective of the actual size of the lot. At the time Lots 1 and 2 were created, the Zoning Ordinance of 1950 was in effect. While the Zoning Ordinance of 1950 did not provide a total "minimum lot area" for particular lots in the A District, it did provide minimum dimensional, setback, and depth requirements for such lots. Using these minimum requirements, and assuming a "zero[-]square-foot building envelope," the ZHB calculated that the minimum lot area for lots in the A District under the Zoning Ordinance of 1950 would be 35,000 square feet—or "approximately 40,000 square feet"—thereby satisfying the definition of a "small lot" under Section 155-11.A. of the Current Zoning Ordinance. As such, the ZHB

17

determined that the Property consisted of two "small lots" and would be subject to the area and bulk restrictions for "small lots" under Section 155-13.B.(1) of the Current Zoning Ordinance.

The ZHB's conclusions are supported by the record and the language of the ordinances at issue. Caln-Nether fails to persuade us otherwise, particularly under the circumstances of this case, where the alternatives appear to be subjecting the Property either to no area and bulk requirements or the bulk and area requirements that pertain to a district in which the Property is not located. Moreover, our conclusion is bolstered by the fact that Caln-Nether does not dispute that it either will consolidate—or be required to consolidate—Lots 1 and 2 prior to land development, at which point the Property would fall under the "large lot" category set forth in Section 155-11.A. of the Zoning Ordinance and still be subject to the same 15% building coverage and 20% impervious surface coverage requirements. Thus, we conclude that the ZHB did not abuse its discretion or commit an error of law in rendering its decision. Caln-Nether is not entitled to relief on this claim.[16]

Caln-Nether next argues that the ZHB improperly concluded that application of the "small lot" requirements did not unreasonably restrict religious assemblies, institutions, and structures in violation of the RLUIPA. Specifically relying upon Section 2000cc(b)(3) of the RLUIPA,[17] a portion of what is known as the

_____

[16] In connection with the issue of whether the ZHB properly denied Caln-Nether's Application, the parties also present argument regarding whether the ZHB improperly denied the Application based on traffic concerns. Given our disposition above that the ZHB did not err or abuse its discretion in denying the Application based on its conclusions regarding Caln-Nether's noncompliance with the building coverage and impervious surface coverage requirements, we need not address the parties' arguments as they relate to the ZHB's denial of the Application based on traffic concerns.

[17] While Caln-Nether quotes from Section 2000cc(b)(3) of the RLUIPA, it mistakenly cites the provision as "Section 2000cc(3)." That provision provides that "[n]o government shall impose

"Exclusions and Limits" provision, Caln-Nether argues that "[a]pplying the 'small lot' [restrictions] . . . when they clearly do not apply substantially impedes the ability to construct a viable church facility and unreasonably limits religious activities" in violation of the RLUIPA. Caln-Nether's Br. at 23-24. Caln-Nether also contends that the ZHB improperly found that Caln-Nether failed to meet the minimum parking spaces for a proposed church when the Current Zoning Ordinance contained no such standards. Again relying upon *Islamic Society of Basking Ridge*, Caln-Nether also claims that, given that there are no parking standards governing its proposed church use, "the Township cannot just make up its own standards or apply what it thinks is appropriate in its own discretion" because that "would unreasonably limit religious activities and structures." *Id.* at 24.

The Township counters that the ZHB properly concluded that application of the A District area and bulk regulations to the Property did not impose an unreasonable restriction on religious assemblies, institutions, or structures in violation of the RLUIPA. The Township argues that the building coverage and impervious surface coverage limitations in Section 155-13 of the Current Zoning Ordinance apply uniformly to all structures in the A District. The Township adds that, as the record demonstrates, a church or similar place of worship of approximately 14,000 square feet could be constructed on the Property in conformity with the Current Zoning Ordinance, which thereby renders Caln-Nether's argument "specious." Township's Br. at 19.

The ZHB contends that "it is impossible to tell how merely applying 'small lot' standards is a violation of [the] RLUIPA" particularly when Caln-Nether has

---

or implement a land use regulation that[] . . . unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).

19

conceded that it would be bound by the same restrictions under the "large lot" category once it is "forced to reverse-subdivide the lots[.]" ZHB's Br. at 27. The ZHB also claims that the record makes clear that multiple other religious enterprises are located in the same zoning district and comply with the same area and bulk regulations without issue. Finally, the ZHB notes that, insofar as Caln-Nether argues that the ZHB improperly found that Caln-Nether failed to meet the minimum parking spaces for a proposed church, that contention is factually incorrect. The ZHB did not conclude that Caln-Nether failed to meet the minimum parking spaces for a proposed church and did not deny the Application on that ground.

Assuming *arguendo* that Caln-Nether has standing to assert such a claim,[18] we are unpersuaded by its contention that the ZHB's application of the "small lot" requirements in this situation violated the RLUIPA. First, as concluded above, the ZHB properly determined that the "small lot" limitations do apply to the Property. Moreover, we agree with the ZHB that Caln-Nether fails to demonstrate how merely applying the "small lot" standards to the Property is a violation of the RLUIPA, under the Exclusions and Limits provision or otherwise. In this regard, Caln-Nether does not challenge the ZHB's determinations that a church or similar use can be constructed on the Property under the Current Zoning Ordinance. Moreover, Caln-Nether does not dispute that it will—either by choice or requirement—consolidate Lots 1 and 2 prior to development, at which point the same area and bulk limitations would apply pursuant to the "large lot" provisions of Section 155-13 of the Current

---

[18] Both the Township and ZHB presented arguments challenging Caln-Nether's standing to bring a claim under the RLUIPA or otherwise question Caln-Nether's eligibility for RLUIPA protection; neither Caln-Nether nor the tribunals below have addressed such arguments. Further, given our disposition of Caln-Nether's RLUIPA-based claim as outlined herein, we likewise need not address those arguments here.

20

Zoning Ordinance. Tellingly, Caln-Nether does not argue that the same coverage limitations as applied to "large lots" violate the RLUIPA.

Additionally, though Caln-Nether relies upon *Islamic Society of Basking Ridge* to support its arguments that the Current Zoning Ordinance contains no parking standards for a church use and that the Township cannot "make up" such standards as it pleases, we note that the MPC does not mandate that zoning ordinances contain parking standards for a church use. Further, Section 155-87 of the Current Zoning Ordinance sets forth the parking requirements governing uses in the A and B Districts, and Caln-Nether did not challenge the substantive validity of Section 155-87 before the ZHB. In addition, Caln-Nether "failed to introduce evidence that the Township had endeavored to 'make up its own standards' for parking requirements for a church use." ZHB Decision at 29. Finally, while Caln-Nether claims that the ZHB improperly found that Caln-Nether failed to meet the minimum parking spaces for a proposed church, we agree with the ZHB that it made no such determination and did not deny Caln-Nether's Application on that basis. Caln-Nether, therefore, has likewise failed to persuade this Court that it is entitled to relief on this issue.

For the reasons stated, we affirm the order of Common Pleas, albeit on somewhat different grounds with respect to the first issue on appeal.

                                                                           
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caln-Nether Company, LP,        :
                Appellant    :
                       :
        v.            :   No. 1077 C.D. 2020
                       :
Zoning Hearing Board of Thornbury  :
Township and Thornbury Township  :

# **O R D E R**

AND NOW, this 8th day of December, 2021, the order of the Court of Common Pleas of Chester County, dated September 24, 2020, is hereby AFFIRMED.

 

ELLEN CEISLER, Judge